The WESTERN FIRE INSURANCE COMPANY, Appellant,

v.

Pryor PEMBERTON et al., d/b/a W. P. Pemberton & Sons, Appellees.

Court of Appeals of Kentucky.
Feb. 16, 1962.

Robert L. Milby, London, for appellant.

286

Donald P. Moloney, Lexington, for appellees.

BIRD, Judge.

Pryor Pemberton, Wilson P. Pemberton and Clarence McGaughey are partners engaged in growing and selling flowers as wholesalers.

When this cause of action arose they operated nine greenhouses constructed largely of glass panes two feet square.

The Western Fire Insurance Company sold the partnership a fire insurance policy to which there was attached the following extension of coverage:

"In consideration of the premium for this coverage shown on the first page of this policy * * * the coverage of this policy is extended to include direct loss by WINDSTORM, HAIL, EXPLOSION, RIOT, RIOT ATTENDING A STRIKE, CIVIL COMMOTION, AIRCRAFT, VEHICLES AND SMOKE."

While the foregoing provision was in full force and effect a windstorm struck the greenhouses and broke two hundred and two (202) panes of glass.

The florists have sued to recover under the quoted provision of the policy for damages to the building and the growing plants.

A jury awarded damages in the sum of $6,999.52. The insurance company appeals.

There is no argument about that part of the judgment which awards damages to the building, nor is there any argument concerning that part of the judgment which awards damages for flowers injured or destroyed by falling glass.

The testimony, however, shows quite substantially that the major damage was caused by evaporation caused by the unusual flow of wind over the growing plants which resulted from the force and pressure of the windstorm without the greenhouses.

Nevertheless, the insurance company contends that the damage was not caused by a windstorm within the contemplation of the quoted provision of the policy. The insurer's position is thus stated in its brief:

"Thus once again there is an absolute absence of any evidence whatsoever that *windstorm* was in any way responsible for the wilting, arrested growth, dehydration, freezing or whatever may have been the cause of the damage to the plants in controversy. While wind or air may have been a contributing cause, *windstorm* certainly was not."

To follow the insurer's reasoning we would be required to hold that the plants be exposed to the full fury of the windstorm before there could be a recovery.

It is admitted that a windstorm raged outside and we are not inclined to deny a recovery simply because a less severe part of it got inside. It makes no difference whether the abnormal flow of air came by reason of the broken glass or by force through the usual and normal cracks in most any type of construction. It was a windstorm reduced in fury but devastating nevertheless.

We must look to the source of the force that provided wind currents within the enclosure. It was the windstorm without that provided that force. Artificial barriers diminished the force but the source of the force was the same within the enclosure as without and the injuries done resulted directly from the windstorm.

No complaint is made of the instructions. Under the instructions and the evidence the jury's conclusion was a proper one.

It is the Court's opinion that the insurer agreed to pay for the losses established by the testimony.

The judgment is affirmed.